Billy J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**William E. Fitzgerald, OSB# 915151**
Assistant United States Attorney
Bud.fitzgerald@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:   (541) 465-6771
Facsimile:   (541) 465-6917
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **1:16-CR-00203-MC** |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| **JOHN MARTIN ROOS,** | |
| **Defendant.** | **[Sentencing: 5/12/2017; 9:00 a.m.]** |

The United States of America, by and through its undersigned attorneys, Billy J. Williams, United States Attorney, District of Oregon, and William E. Fitzgerald, Assistant United States Attorney, hereby submits the following memorandum to aid the Court at sentencing.

## **FACTS**

From December 2015 to March 2016, defendant John Martin Roos made numerous threatening statements via Facebook and Twitter. These statements included specific threats to the President of the United States, Barack Obama, and general threats to Federal Bureau of Investigation (FBI) agents.

**The Threats**

The defendant's statements included the following:

. . . FBI acts like they are something to be feared after ambushing American patriots in Oregon, they are pussies.   We will snipe them with hunting rifles everywhere . . .

. . . America doesn't want children and women refugees.   Obama, you goat fff'ing fudgepacker, the refugees are men of fighting age.   Black lives matter!   Sure we need someone to pick cotton and wash cars.   Paris, burn diseased muslim neighborhoods to the ground and start over with human beings.   Obama, you are on a hit list.   Let's see how long FB blocks me again (sic) . . .

. . . An assassin's bullet would stop all the traitorous Obama bullshit, shoot him now . . .

. . . FBI murderers, I am not Lavoy.   I see a FBI vest or badge I start shooting and call it self-defense, Come get this old man.   Ur pussies (sic) . . .

. . . Enough Patriots murdered by the Obama admin.   Enough Patriots and I am going to assassinate Obama . . . (sic) . . .

. . . FBI and all vermin they all will be shot in the face . . .

. . . Kill all muslim fucks start with Obama, his children first . . .

. . . Now a muslim animal kills people in Vegas.   America I call on All Patriots to get retribution on muslims.   Bomb Mosques and kill muslims now . . .

. . . This is a PIG it is time he met my .338 win mag and I blow his face off . . .

. . . No mistake Michele Obama is a gorilla face and Barack is a pussy monkey.   Both don't deserve to live so let's kill them . . .

. . . FBI are murdering pussies.   Come kill this old man, If I see a FBI vest I start shooting and call it self-defense, AK-47 with armor piercing . . .

. . . Obama is nothing less than a vile muslim trash.   He is not worthy to be in Nancy Reagan's presence even death.   This asshole is barely worth the cost of a bullet to blow his eaff (sic) . . .

. . . The establishment is trying to steal the election from Trump.   A warning to you liberal vaginas, Patriots are more than tired of your shit.   If you want to see a revolution in this country keep your shit up.   Obama is already on a kill list as is Lynch.   Your nome can be there too (sic) . . .

. . . You don't teach these animals you kill the little fucks and let the bodies rot on the streets.   Obama I will kill you and gorilla face . . .

. . . The FBI cowards, visited me at the VA apt. I said I would kill Obama and FBI pussies, would come at me at home like the pussies they are . . .

. . . How much of this has to happen before the World wakes up and kills muslim animals, everywhere.   I'll start by Killing Obama Fuck you FBI . . .

. . . No he is not a good peson (sic), he is a low life muslim goatfucker, who will be killed as you will be and I will kill Obamna (sic) personally . . .

. . . Freedom of speech unless yhuo (sic) tell the truth about Muslim animals, I say kill them all, starting with Obama, get me within 500 yards I do it . . .

. . . Who gives a shit what a Muslim cunt says.   I'll shoot the cunt and all the other muslim vermin in their face.   I'll shoot Obama . . .

. . . Remove the rag from her head lets remove all muslim animals head, I'll blow Obama's head off my pleasure.   FBI pussies come and get me and die . . .

. . . FBI fucks you better come and get me.   I leave today to kill Obama, this nigger will never take over the U.S.   I will kill him and patriots will you . . .

PAGE 3 - UNITED STATES' SENTENCING MEMORANDUM

. . . Yeah this is the only way to deal with muslim animals theyall (sic) need shot in the head. I'll start by shooting Obama the traitor in the face . . .

**The Investigation**

This case was referred to both the FBI and the United States Secret Service (USSS) based on the nature of the threats. On March 25, 2016, FBI Special Agents made contact with the defendant at the Veteran's Affairs Southern Oregon Rehabilitation Center and Clinics (VA SORCC) in White City, Oregon.

The defendant acknowledged that he made several postings that threatened President Obama and FBI agents. He explained that the catalyst for the threats was an incident involving Lavoy Finicum, who had been shot and killed by FBI agents in Burns, Oregon, in January 2016 following a highly publicized occupation of the Malheur National Wildlife Refuge by Finicum and other individuals.

The defendant explained that his social media postings were a means by which he "blows off steam." He further explained that he did not intend to harm anyone, but if given the opportunity he would "punch Obama in the nose" because Obama "pisses him off."

On March 30, 2016, USSS agents made contact with the defendant at his residence, 1497 Poplar Drive, Medford, Oregon. The defendant stated that he made the comments online because "I can't help the way I feel." He denied having the physical ability to carry through on his threats. During the same interview, the defendant admitted to owning a .45 caliber Glock pistol and a scoped rifle, which he said he maintained at his apartment.

On April 19, 2016, agents obtained a federal search warrant authorizing the search of the defendant's apartment and person. During the subsequent search of the apartment, agents found an

PAGE 4 - UNITED STATES' SENTENCING MEMORANDUM

unloaded AK-47 rifle mounted inside next to the front door.   A photo of the mounted AK-47 is at Exhibit 1.

A rifle and shotgun, both loaded, were found in the defendant's bedroom and a loaded .45 caliber Glock semi-automatic pistol was concealed in the living room between couch cushions.   The handwriting on the rifle stock said, "From a place you will not see comes a sound you will not hear."  See Exhibits 2 and 3.

Four pipe bombs were found at the apartment.   See FBI lab report at Exhibit 4. The lab report indicates that the four devices contained explosive material and were Improvised Explosive Devices or IEDs.   At least one of the IEDs had ball bearings attached to the metal housing.

While the search was being executed, a Medford Police Department (MPD) Task Force Agent (TFA) and FBI agent made contact with the defendant at the VA SORCC.   The defendant's person and vehicle were searched.   The defendant was cooperative and advised officers of the presence of a firearm in the vehicle.   A search of the vehicle produced a loaded Kimber .45 caliber semi-automatic pistol underneath the floor mat on the driver's side.   The defendant admitted the four pipe bomb IEDs in the white bucket were his. He told officers the pipe bombs contained black powder and were detonated by a fuse.

### The Arrest

Based on his internet threats and the firearms and explosives found at his apartment, the defendant was arrested on April 28, 2016, and has remained in custody since that date.   The defendant made his first appearance on these charges on May 3, 2016.

### GUILTY PLEA AND PLEA AGREEMENT

On November 7, 2016, defendant pled guilty to Counts 5, 9 and 11 of a 14-count Superseding Indictment. The defendant entered his guilty plea pursuant to a plea agreement.

Count 5 charges the defendant with making threats against the President of the United States, in violation of Title 18, United States Code, Section 871(a). Count 5 is a Class D felony punishable by a maximum term of imprisonment of 5 years and a maximum fine of $250,000.

Count 9 charges the defendant with making threats against Federal law enforcement officers, specifically, Federal Bureau of Investigation special agents, in violation of Title 18, United States Code, Section 115(a)(1)(B).   Count 9 is a Class C felony punishable by a maximum term of imprisonment of 10 years and a maximum fine of $250,000.

Count 11 charges the defendant with possessing an unregistered destructive device, in violation of Title 26, United States Code, Sections 5861(d) and 5871.   Count 11 is a Class C felony punishable by a maximum term of imprisonment of 10 years and a maximum fine of $10,000.

Under the plea agreement, the parties have agreed to the sentencing guideline calculations discussed below and the government has agreed to recommend a sentence within the guideline range and to move at sentencing for dismissal of the remaining counts.   Defendant is free to recommend a sentence below the guideline range.

The parties did not contemplate the 6-level "official victim" enhancement under U.S.S.G. § 3A1.2 so Probation's calculated range of 63-78 months is higher than the parties' calculation of 37-46 months.

The parties do not dispute the accuracy of Probation's calculation.   Notwithstanding the error, the United States will honor its promise to recommend only those adjustments explicitly set forth in the plea agreement and thus will limit its recommendation to a sentence within the 37-46 month range.

**SENTENCING CONSIDERATIONS**

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.

For sentencing purposes, the Court must first determine the guideline range and then decide a sentence that is sufficient, but not greater than necessary, to accomplish the ends of sentencing.  The sentence should: (1) reflect the seriousness of the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes; and (4) provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).

A. **RELEVANT DECISIONS**

In <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." <u>Booker</u>, 125 S. Ct. 757.  This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction.  The sentence will be subject to review by the Court of Appeals for "reasonableness."  <u>Id.</u> at 769.

In the wake of Booker, this Court must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed.

A sentence within the guideline range accommodates the Congressional purpose, affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible. The government anticipates that only sentences outside the guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate.

The Supreme Court has held that there is no rule which requires an "extraordinary circumstance" to justify a sentence outside the guideline range. Gall v. United States, 128 S. Ct. 586, 595 (2007). Nevertheless, the Court in Gall recognized that the guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentence decisions." Id. at 594. It is because of the "extensive empirical evidence" supporting the guidelines that the United States continues to recommend guideline sentences in all but extraordinary cases.

Even though the guidelines are advisory rather than mandatory, the district court must begin all sentencing proceedings by calculating the applicable guideline range. Id. at 596. While there is no presumption of unreasonableness that accompanies a sentence outside the guideline range, id. at 597, no sentence within the range will be reversed, absent an abuse of discretion. Id. at 596. See Kimbrough v. United States, 128 S. Ct. 558, 574 (2007) ("District Courts must treat the Guidelines as 'the starting point and the initial benchmark'.").

B. **GUIDELINE ANALYSIS**

The advisory guideline calculations are governed by the 2016 edition of the United States Sentencing Guidelines Manual, hereinafter "U.S.S.G."

PAGE 8 - UNITED STATES' SENTENCING MEMORANDUM

1.  **Count Group I:   Threatening Communications**

(a) **Base Offense Level:**   Pursuant to U.S.S.G. § 2A6.1, the base offense level is 12.

(b) **Specific Offense Characteristics:**   Under U.S.S.G. § 2A6.1(b)(1), if the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels.   The defendant's threats included numerous statements that he would kill victims, with firearms including an AK-47 rifle.   The defendant was found in possession of an AK-47.

Under U.S.S.G. § 2A6.1(b)(2)(A), if the offense involved more than two threats, increase by 2 levels.

Under U.S.S.G. § 2A6.1(b)(5), if the defendant (A) is convicted of 18 U.S.C. § 115, (B) made a public threatening communication, and (C) knew or should have known that the public threatening communication created a substantial risk of inciting others to violate 18 U.S.C. § 115, increase by 2 levels.   The defendant's voiced support for and encouragement of violent acts of others, including the statements, "We will snipe them with hunting rifles everywhere" (referring to the FBI) and "An assassin's bullet would stop all traitorous Obama bullshit, shoot him now, and "let's kill them" (referring to President and Michelle Obama).

(c) **Victim-Related Adjustment:**   Under U.S.S.G. § 3A1.2(a), if the victim was a government officer or employee, or an immediate family member, and the offense was motivated by such status, increase by 3 levels. Under U.S.S.G. § 3A1.2(b), if the victim qualifies as an official victim and the crime of conviction is an offense against the person, increase by 6 levels. Hence, because of the Obamas' official status and because a threat is a crime against the person, a 6-level enhancement applies.

Because the parties did not contemplate the official victim enhancement, the United States will not recommend a 6-level increase on that basis.

PAGE 9 - UNITED STATES' SENTENCING MEMORANDUM

    **(d)**   **Adjusted Offense Level: 22**

    2.   **Count Group II:**   Possession of Unregistered Destructive Device

    (a)   **Base Offense Level:**   Pursuant to U.S.S.G. § 2K2.1(a)(5), the base offense level is 18.

    **(b)**   **Specific Offense Characteristics:**   Under U.S.S.G. § 2K2.1(b)(1)(A), if the offense involved three or more firearms (as defined in 18 U.S.C. § 921(a)(3), to include any destructive device per Application Note 1), increase by 2 levels. The defendant possessed four pipe bombs.

    **(c)**   **Victim-Related Adjustment:**   None.

    **(d)**   **Adjusted Offense Level: 20**

    3.   **Multiple Count Adjustment:**   Grouping rules under U.S.S.G. § 3D1.4 would add 2 more levels. The adjusted offense level for the threat group is 22 and for the destructive device group it is 20.

Under U.S.S.G. § 3D1.4(a), each group counts as a separate unit so 2 units means the Court would add 2 levels to the highest offense level, referring to the table at U.S.S.G. § 3D1.4. The result is that the offense level for the group with the highest adjusted offense level, 22, would be increased 2 levels to 24.

    4.   **Acceptance of Responsibility**

Pursuant to U.S.S.G. §3E1.1, Defendant is entitled to a 3-level reduction because his adjusted offense level is 16 or more and he has clearly demonstrated acceptance of responsibility for his offense.

    5.   **Guideline Range**

The defendant's criminal history category is I and his final offense level is 21, resulting in advisory guideline range of 37-46 months.

**RECOMMENDATION**

At time of sentencing, the government will address any questions regarding the factors in 18 U.S.C. § 3553. Based on the foregoing analysis, the government respectfully recommends a guideline sentence of 46 months in prison.

DATED this 3rd day of May 2017.

                                                  Respectfully submitted,

                                                  BILLY J. WILLIAMS
                                                  United States Attorney

                                                  */s/ William E. Fitzgerald*

                                                  WILLIAM E. FITZGERALD
                                                  Assistant United States Attorney